the act of congress, has restrained the jurisdiction of the court in the supposed cases. The only answer to the question is, that the want of jurisdiction is the result of certain general principles of law, acting upon the particular subject. In like manner, the jurisdiction of these courts, when sitting in an admiralty or prize cause, is limited by those general principles which apply to courts of admiralty in England and the United States, as well as in other countries. Though bounded only by the nature of the causes over which they are to decide, and not in any respect by place; it is nevertheless essential to the exercise of this jurisdiction by any particular court, that the person or thing against whom or which the court proceeds, should be within the local jurisdiction of such court. Such was the jurisdiction of the several vice-admiralty courts of Great Britain, in America, and the West Indies, until the statute of the 41st of George III., which, whether sitting as instance or prize courts, were confined to breaches of the revenue laws, committed within their local jurisdictions, and to cases of vessels, &c., brought within their local jurisdiction. The only exception to the general rule above stated, applicable to the court of admiralty, in prize causes, is that of a vessel lying in the port of a neutral country, most unwillingly assented to by Sir W. Scott, under the sanction of precedents, but powerfully opposed by the reasons urged against it by that distinguished judge. But even in that case, it was never pretended that the process of the court, could go into the neutral country, to compel an appearance, or to enforce the execution of the sentence.

But secondly, the jurisdiction of these courts in prize causes, is limited, as to persons, by the express provisions of the 11th section of the judiciary law before referred to. Prize proceeding against an inhabitant of the United States, is unquestionably a civil suit; and if it be against the person, instead of the thing, the jurisdiction is excluded, unless it be instituted in the court of the district whereof he is an inhabitant, or is found at the time of serving the process. The manifest policy of the judicial system of the United States, was, to render the administration of justice as little oppressive to suitors and others as possible; and it corresponds entirely with that construction, which confines the process of the courts within the limits of the district in which the court sits, and from which it issued.

In the exercise of a jurisdiction over persons not inhabitants of, or found within the district where the suit is brought, there are difficulties, which, in the opinion of the court, nothing but an act of congress can remove. In what manner, for instance, is the marshal to dispose of the person? He has no authority to conduct him beyond the limits of his district, nor to deliver him over to the marshal of an adjoining district, for that

purpose. Can he commit him to the gaol of the district where the arrest was made? If he can, the case would present a very extraordinary novelty in jurisprudence—that of a defendant, imprisoned in one district, to answer to a suit depending against him in another, how great soever the distance of the one place might be from the other. In criminal cases, where the offender is arrested in one district, for trial in another, the 33d section of the judicial law has provided, not only for the removal of the offender and witnesses, but also for the transmission of the process and recognizance, taken in the case, to the proper court. In like manner, should it be the will of congress to vest in the courts of the United States an extra-territorial jurisdiction in prize causes, over persons and things found in a district other than that from which the process issued, it would seem to be proper, if not absolutely necessary, at the same time to prescribe the mode of executing the process. Upon the whole, we are of opinion, that the petitioner ought to be discharged.

## Case No. 5,658.

### Ex parte GRAHAM.

[See Case No. 5,657.]

## Case No. 5,659.

### In re GRAHAM.

[8 Ben. 419] [1]

District Court, S. D. New York.   May, 1876.

#### WITNESS—PRIVILEGE—CRIMINATION.

It having been testified in bankruptcy proceedings, that the bankrupt had lost a large sum of money, a short time before his bankruptcy, in a gambling-house kept by B. and M. at No. 16 West 24th street, New York. B. and M. were summoned to appear before the register for examination. The question was put to B.: "What year was it you removed from No. 16 West 24th street?" B. refused to answer, on the ground that the answer to the question would tend to criminate him. The question was put to M.: "Did you ever reside at No. 16 West 24th street?" M. refused to answer on the same ground: *Held*, that the witnesses were privileged from answering the questions.

[Cited in U. S. v. M'Carthy, 18 Fed. 88.]

In this case the register certified that a witness had testified before him that one Samuel E. Briggs and one Charles N. Moody were the keepers of a gambling-house at No. 16 West 24th street, in the city of New York; that the above named bankrupt [William M. Graham] had lost at gaming, in said house, over $30,000, which he had paid to Briggs and Moody a short time before the adjudication of bankruptcy; that thereafter a summons was issued by the register requiring Briggs and Moody to come before him for examination; and that, they having been

[1] [Reported by Robert D. Benedict, Esq., and Benjamin Lincoln Benedict, Esq., and here reprinted by permission.]